JOHNSON ET ALS. *vs.* TOULMIN ET ALS.

1. The perception of the entire profits by one tenant in common is not of itself sufficient to divest the possession of his co-tenant, nor are acts of ownership by one tenant in common necessarily to be construed into acts of disseisin; but an undisturbed and peaceable occupancy of the premises by one for near thirty years, under an exclusive and notorious claim of title, without any payment of rents and profits, or any acknowledgment of the right of the other, is sufficient to raise the presumption of an actual ouster.

2. Although statutes of limitation do not apply to demands purely equitable, yet courts of equity, acting in accordance with legal analogies, adopt these statutes in cases analogous to those in which they would apply at law.

3. Where one tenant in common of an equitable title, after the abandonment of possession by both and their removal from the State, returned and made a new and distinct contract of purchase with the vendor, from whom he received a deed to himself individually, which he had duly recorded, the mere fact that he, about the same time, caused the original unexecuted contract, under which he and his co-tenant previously held, to be spread upon the record, is not sufficient to rebut the presumption of an adverse possession arising from a long continued, notorious, and peaceable occupancy under the new purchase.

4. Where a defendant relies on the plea that he is a *bona fide* purchaser without notice, he must deny notice fully and positively, though it be not charged in the bill, and if facts be charged from which such notice may be infered, he must deny such facts.

5. Acquiescence and laches for a great length of time by a party out of possession, productive of much hardship and injustice to others, cannot be excused except by showing some actual impediment or hindrance caused by the fraud or concealment of the party in possession, which will appeal to the conscience of the chancellor. In such case, a court of equity, acting on principles peculiarly its own, founded on lapse of time and the staleness of the demand, in its desire to promote the peace and repose of society, although no statute of limitations apply, will not interpose and grant relief against an adverse right.

ERROR to the Chancery Court of Mobile. Tried before the Hon. J. W. Lesesne.

THE bill in this case was filed by the plaintiffs in error as the heirs at law of Thomas Johnson against Theophilus Toulmin,

the heirs of Daniel Juzan, and the heirs of David Files, for the purpose of redeeming mortgaged premises, for an account, &c. The facts are sufficiently stated in the opinion of the court.

SEWALL, for the plaintiffs:

1. Files & Lyon, the purchasers from Juzan, went into possession under the contract with him in 1813. It was a joint-purchase; they were tenants in common; their possession was co-extensive with their right, and the possession of one was the possession of both.—Adams on Eject. 54, and notes. This possession continued the same until 1816, when Files took a deed from Juzan and gave back a mortgage, but there is no evidence that this act was intended by Files to show that he claimed exclusively for himself and adversely to the rights of Lyon, under the original contract. On the contrary, there is evidence of the most conclusive kind to show that by that act he did not intend to change the rights of the parties—for at the same time that he took the deed from Juzan he placed with it upon record the original contract of 1813, thereby admitting and declaring, in the most public manner, that he took the title in subservience to the rights of Lyon, under that original contract, and would hold it as trustee for Lyon to the extent of his interest. But even without this declaration, he would be held a trustee for Lyon for one moiety.—Champion v. Brown, 6 John. Ch. 402-3; Hoagland v. Laturette, 1 Green. Ch. 254. This act of Files was a further admission that Lyon had, on his part, complied with the terms of the contract and made his proportion of the payments. The possession, thus acquired, remained as before—a silent possession by Files until his death, in 1820, unaccompanied by any act amounting to an ouster—or by any notice to his co-tenant, Lyon, that his possession was adverse, and therefore cannot be construed into an adverse possession.—McClung v. Ross, 5 Wheat. 124. Files never denied the right of Lyon; nor have his heirs ever denied the right of those claiming under Lyon. Their joining in this bill is an admission of their right. Lyon never abandoned his rights in said contract with Juzan. Absence from the State is no abandonment; on the contrary, his sale and conveyance to Johnson, in 1816, by deed of warranty, was an affirmance of his

Johnson et als. v. Toulmin et als.

rights, and conclusive to show that he had no intention of abandoning them. The abandonment set up in the answer is not responsive to any allegation, charge, or interrogatory contained in the bill, and cannot therefore be taken as true; besides, it was put in issue by the replication, and is wholly unsustained by proof. The heirs of Johnson then had a perfect right to ask for a redemption of the mortgage made by Files, and conveyance from his heirs or assignee of a moiety of the land. Toulmin succeeded to the rights of Files in 1828, and went into possession, claiming to hold adversely to the complainants. He was the son-in-law of Juzan, and claims that he paid off the mortgage made by Files and received conveyances from the other heirs. As to the heirs of Johnson, Toulmin having acquired the mortgage interest from the other heirs of Juzan, is in the position of a mortgagee in possession, from 1828, and is liable to them in this suit, unless their claim is barred by the statute of limitations, or he is protected as a *bona fide* purchaser for a valuable consideration, without notice.

2. The statute of limitations is not a bar to complainants' claim. The first act adverse to their rights was the sale in June 1825, at which Toulmin was the purchaser; but this purchase was not perfected till 1828—then he paid the purchase money, received his title deed and went into possession, as he states in his answer. This was the first adverse possession, and the statute commenced running only from this time, and nothing less than twenty years would be a bar. The mortgagor was in possession up to this time—not holding adversely to the complainants, but for them; and where the mortgagor continues in possession, no length of time will bar the equity of redemption, and even a possession of a part of the mortgaged premises will keep alive the right to redeem.—Ang. & Am. Lim. 501, § 16, and cases cited; Oliver v. Piatt, 3 How. S. C. 411. But even if it commenced running in 1825, under our acts and decisions the statute was no bar.—Henry & Wife v. Thorpe, 14 Ala. 103; *Doe ex dem.* Nichols v. Haskins, 15 ib. 619. Toulmin's admission in his answer, that he went into possession in 1828, and paid off the mortgage of Files, is conclusive on him that the mortgage was a valid, subsisting security, and the mortgagor in possession within twenty years before suit brought.—Price v. Cooper, 1 Sim. & Stu. 347.

3. The objection of lapse of time and staleness of the claim is not a bar to a recovery. The death of Johnson and of Files, the infancy of their heirs and the non-residence of Johnson and his heirs, sufficiently account for the delay in bringing the suit. Besides, when the claim includes the right to redeem a mortgage, nothing short of an adverse claim and possession of twenty years will bar it. All the cases where the objection of lapse of time has prevailed have been cases for specific performance merely, or cases merely setting up trusts. There is no instance where the right of redemption has been barred by less than twenty years adverse possession.

4. The defence of *bona fide* purchaser, &c., is insufficiently pleaded. It does not deny notice at the time the money was paid and deed given, in 1828, nor does it deny every fact from which notice might be infered—nor does it admit title and possession in the seller.—Story Eq. Pl. §§ 805-6; Met. Eq. Pl. (last edit.) 274-5; Davis v. Thomas, 2 G. & Coll. 234.

CAMPBELL, for the defendants:

The plaintiff's grantor entered into a contract with Daniel Juzan, dated in 1813, to which David Files was also a party jointly, with the plaintiff, for the purchase of land in Mobile county. The terms of this contract were not performed by the parties, (Files & Lyon,) and the answer charges that it was considered as abandoned. In 1817, several years after the contract had been made and while the parties (Lyon & Files) were in default, a new contract was made between Files and Juzan, by which Juzan conveyed the land to Files and took a mortgage to secure the purchase money. The conveyance to Files is absolute and with warranty. Files entered upon the land and retained it until his death. After his death the land was sold *as his own* and Toulmin became the purchaser, paying $850 for the title, and agreeing to pay off $3,000 and upwards, still due on the mortgage of Files to Juzan. The plaintiff's grantor conveyed to the plaintiff in 1816. It does not appear from the evidence that he ever made a claim on the contract from that time until this suit was brought. The order of sale of the land was made in 1824: The sale took place in 1825, and the order of confirmation was in 1828. It does not appear that the plaintiff or his grantor ever paid a cent on the

contract of 1813, or ever asserted a claim upon it. All the distinct acts of payment and possession are on the part of Files. The heirs of Files are stricken from the bill, and the claim of the plaintiff stands upon his agreement of 1813, with such implications as might be deduced from the fact that Files became the purchaser. Files purchased of Juzan in April 1816. He died in 1820 : The plaintiff got his conveyance in March 1816, from Lyon. Lyon had no interest at the date of the second contrant between Juzan and Files. Johnson has never asserted a claim until 1846, when this bill was filed. In the meantime, the property has been sold as the property of Files.— Toulmin purchases the property and has held it for twenty years or more from the date of the purchase, and eighteen years from his deed. The case then is brought fully within the authorities.—2 Story's Equity, §§ 771, 775; Sugden Ven. 500; 7 Howard's S.C. R. 234, (large edit.) 1 ib. 189, 161; Maxwell v. Kennedy, U. S. S. C. 1850; 1 Sug. Ven. 496, (bottom page, 424.)

2. Toulmin is a *bona fide* purchaser, without notice, and is entitled to equitable protection.—2 Story's Eq. 715.

3. The statute of limitations is operative in favor of the defendant. Juzan purchases absolutely and holds absolutely from 1816, and the possession is continuous until 1846, without any act of recognition of the title of Johnson, or any assertion by him of a right to possession.—6 Dana, 432; 6 Cow. 633; Adams' Eject. 55, and notes.

CHILTON, J.—It is undoubtedly true as a general proposition, that the possession of one joint tenant, coparcener or tenant in common, is the possession of his co-tenant, and is regarded as in support of their common title—(see 2 Cruise on Real Prop., by Greenl. 393, § 14, and the American cases collected in note 1)—but it is equally well settled, that one tenant in common may disseise another. What acts, however, shall constitute such disseisin, or ouster, is not so well agreed upon by the authorities. The simple fact, that one tenant in common receives the whole profits, is not sufficient to divest the possession of his co-tenant.—Willison v. Watkins, 3 Pet. 51; Chambers v. Chambers, 3 Hawks' R. 332; 2 Greenl. Cruise, 393. Neither are acts of ownership necessarily to be construed in tenancies

in common as acts of disseisin. It is said to depend upon the intent with which they are done, and their notoriety as affording evidence of notice as to the adverse character of the possession.

It seems formerly to have been held, that a sole claim by one tenant, without more, could never change the character of the possession—(2 Cruise, by Greenl. 394, § 15, and note;) but the current of English, as well as American cases, sustains the doctrine, that an *ouster* may be presumed from an exclusive and peaceable occupancy for a long space of time.

In Fisher & Taylor v. Prosser, Cowp. 217, the tenant had occupied thirty-six years. Lord Mansfield said, that such length of possession was more than quadruple the time given by the statute for tenants in common to bring their action of account, if they had thought proper to do so, namely, six years: "But in this case," he added, "there is no evidence whatsoever of any account demanded, or of any payment of rents and profits, or of any claim by the lessors of the plaintiff, or of any acknowledgment of title in them, or of those in whom they would now set up a right; therefore I am clearly of opinion, as I was at the trial, that an undisturbed and quiet possession for such a length of time is a sufficient ground for the jury to presume an actual *ouster*, and that they did right in so presuming." The other judges concurred in his opinion. It was conceded in that case, that if the tenant in common held possession *eo nomine*, no length of time would bar his co-tenant; for, holding *as tenant in common* was an affirmation of his co-tenant's title, as well as his own. It was further said by Lord Mansfield, "that some ambiguity seems to have arisen from the term *"actual ouster,"* as if it meant some act accompanied by real force, and as if a turning out by the shoulders was necessary. But that is not. so. A man may come in by a rightful title, and yet hold over adversely without a title." In Jackson *ex dem*. Bradt et al. v. Whitbeck, 6 Cowp. R. 632, the same doctrine was asserted by the Supreme Court of New York, upon the authority of the above case in Cowper. In Mehaffy v. Dobbs, 9 Watts' R. 363, it was held that such presumption of *ouster* might be indulged from possession exceeding twenty-one years. In Frederick et al v. Gray, 10 S. & R. 182, Tilghman, C. J., says, "when one tenant in common enters on the whole, and takes the profits of the whole, and *claims the whole exclusively* for

twenty-one years, the jury ought to presume an actual *ouster*, though none be proved." In Bolton v. Hamilton, 2 Watts & Serg. 294, the Supreme Court of Pennsylvania review the former decisions of that State, and they engrafted a qualification upon the doctrine, formerly held in the two cases last above cited, holding that where a claim of exclusive ownership by the tenant was manifested by his acts, " such acts ought so necessarily and notoriously to import a claim of exclusive right, as to apprise the co-tenant of the nature and existence of it;" and a majority of the court held, that although the exclusive perception of the profits by one tenant in common, for a period exceeding twenty-one years, raised a *natural* presumption of *ouster*, upon which the jury may find the fact to exist, if it satisfies their mind, yet the *law* will not, from this fact merely, raise a presumption of such *ouster.* In Abercrombie v. Baldwin et al. 15 Ala. 363, this court held, as the principle deducible from many authorities, cited in the opinion of the late Chief Justice, that the possession of one tenant in common may become antagonistic, and exclusive of a co-tenant, and will become so, by an unequivocal and notorious denial of the right of his co-tenant.

These authorities, and the cases refered to in them, may suffice to show, that in cases where the title is complete in the tenants in common, there are circumstances under which an adversary claim to the entirety may be set up by one of the tenants so as to bar the right of his co-tenant by the operation of the statute of limitation. We regard the case of Fisher & Taylor v. Prosser, *supra*, as correctly stating the law upon this point. It has, so far as we have examined the question, been generally followed by the American courts. It is well settled, that although the statute of limitations does not apply to any demand purely equitable, yet courts of equity, acting according to legal analogies, adopt it in cases analogous to those in which it applies at law.—Stackhouse v. Barnston, 10 Ves. 453; Cholmondely v. Clinton, 2 Mer. R. 1. But where the remedy at law and in equity is concurrent, the statute of limitations applies alike to both forums.—Wood v. Wood et al. 3 Ala. 756; Johnson v. Johnson, 5 ib. 90, and cases cited.

Let us apply the analogy of the statute to the case made by the facts before us. Had the complainant's title been legal, and

had their ancestor, or the person from whom he purchased, actually been *ousted* for more than twenty years, his right of entry and his action of ejectment to recover the possession would have been barred. Had an action, before the expiration of the twenty years, been instituted for an account for rents and profits, then the party could only have recovered for six years back, by analogy to the action of account.—Lewis v. Stafford, 4 Bibb, 319; Prince v. Heylin, 1 Atk. 493. In the case before us, the complainants claim to have derived their interest of one moiety of the land, and the right to a participation to the same extent in the rents and profits, as heirs of Thomas Johnson, who purchased the same of J. Lyon on the 11th day of March 1816, in the State of South Carolina.

It appears that on the 8th day of April 1813, Daniel Juzan, James Lyon and David Files entered into a written agreement, by which Juzan sold to L. and F. the land in controversy, for which it was agreed they should pay him four thousand dollars, as follows—six hundred dollars prompt payment, and five hundred dollars every six months thereafter, until the whole should be paid, and when the whole purchase money should be paid, Juzan was to make them a title to the land, he retaining that portion of it which he then had in occupation until the completion of the payment. This agreement was signed by all the parties. Two receipts of money by Juzan are endorsed upon it —one of two hundred and fifty dollars, bearing the same date with the agreement, which does not, however, state by whom such payment was made; the other, for three hundred and fifty dollars, paid on the day following—namely, the 9th April 1813, by David Files. No other payment appears to have been made under this agreement, and there is no proof which of the two, Files or Lyon, paid the two hundred and fifty dollars. The bill charges that upon the payment of the $600 by Files and Lyon, they took possession of such portion of the land as was not reserved by the agreement for the use of Juzan, and erected a grist and saw-mill on a creek upon the land. The defendant, Toulmin, answers, that as to the payments, he has " no personal or accurate knowledge," and requires strict proof thereof. He also states that Files took possession of a few acres of said land after the agreement was made by him and Lyon with Juzan, in 1813, and erected a mill and a small log cabin, but that the mill

5

was soon destroyed, and Files having lived in the cabin about a year, abandoned it and removed from the county of Mobile and went to reside in some other section of the State: "That about the same time Lyon left the State, and has never since returned, nor as far as respondent knows, has he since been heard of." The defendant further answers, that at the time Files left the place, both he and Lyon intended to abandon the contract with Juzan for the purchase of said land, but that three years subse-quent thereto, Files returned to Mobile and opened a new ne-gotiation with Juzan for the purchase of said tract, which, it appears, embraced some 1,900 acres, and upon which Juzan had continued to reside, "and at this time said Files caused to be recorded the original agreement for the purchase of the premises refered to in complainants' bill"—which original agree-ment, at the time of the new negotiation, the answer avers had been forfeited on account of the non-fulfilment of its stipulations, on the part of Files and Lyon.   The answer then sets out the purchase made by Files of Juzan of said land and the execution of a deed by the latter to Files, on the 22d April 1816, in con-sideration of the sum of $3,900, with the usual covenants of warranty, and a mortgage of the same date, upon the lands, executed by Files to Juzan to secure the payment of $2,000 by the last day of June 1816, and the further sum of $1,400 by the 15th day of December following.   This deed and mortgage appear to have been duly acknowledged and recorded in the clerk's office of the County Court of the county of Mobile, where the land lies.   The original agreement appears to have been received for record and recorded on the 10th of January 1816, as is shown by the certificate of the clerk endorsed upon the same, but without any proof or acknowledgment of its exe-cution.   The deed from Lyon to Johnson, above alluded to, purporting to convey an undivided moiety of the land, in con-sideration of $1,000, and with the usual covenants of warranty, appears to have been spread upon the record in Mobile, on the 15th Sept. 1818, upon proof of its execution in the State of South Carolina, the certificate of which is informal and insuffi-cient to admit it to record.   It appears also, that Files con-tinued in possession until 1820, when he departed this life, and administration was granted on his estate to one Austill, upon whose petition, in 1823, to the Orphans' Court for the sale of

said land by reason of a deficiency of the personal assets to pay the debts of the intestate, said land was duly ordered to be sold by said court, which order was made the 10th March 1824, and commissioners were appointed, who made the sale the first Monday in May 1825; the same being sold subject to the mortgage given by Files to Juzan. The defendant, Toulmin, became the purchaser, at the price of $850, which added to the sum then due upon the mortgage which Toulmin has since paid, made the sum of $3,901. In regard to this purchase, Toulmin answers that at the time he made it, "he fully believed, and still believes that the said sale was legal, and that it completely divested the heirs of said David Files of all title either at law or in equity, and that at the time of said purchase he was wholly ignorant of any title or right in or to said premises of said Lyon, or of any other person claiming through or under him," &c. The answer also states that immediately after said purchase, Toulmin took possession, &c. The commissioners' deed to Toulmin bears date the 6th June 1828—Toulmin has also proved a deed from the heirs of Juzan, to whom he tendered an interest in his purchase, but all of whom, except one of them, declined, and that one has an interest with him in the land. The bill in this case was filed on the 27th day of February 1846. These are substantially the facts disclosed by the record, embracing copies of the several deeds exhibited, and by the consent of counsel, regarded as proved.

It will be observed, that Files and those claiming to hold under him have been in the exclusive perception of the rents and profits of the land since the 22d April 1816, a period of nearly thirty years: That he and they have not only been in receipt of the profits, but in the exclusive and uninterrupted possession of the premises during all this time, holding under a deed duly recorded, (and which registration gives notice to the world,) made to Files *individually.* Now had the title of Files and Lyon been legal, and had the latter, or those claiming under him, instituted his or their action of ejectment, under the decisions above referred to, a jury might have presumed, and it would have been their duty to have found an actual ouster: And consequently a recovery could not have been had.

But it is strenuously contended that the registration of the original agreement by Files, as stated in the answer to have

been made at the *same time* the new arrangement was entered into, is an admission on his part, that he held in subservience to such agreement, and not hostile to it. We would observe, that either the certificate of the clerk or the answer is at fault in stating the time of the registration of this agreement. The first shows it to have been the 10th Jan. 1816; the latter, the 22d April following. But, considering it in the strongest light against the defendant, what does the placing the agreement on record amount to? One would naturally suppose, in the absence of all explanatory evidence, or of any circumstance conducing to a contrary conclusion, that Files considered this agreement as still subsisting, and that his entry and possession was in subordination to the title thus recognised. But it must be remembered, the fact of recording is stated in the answer, and the defendant in the same connection, and in the sentence immediately succeeding the averment, states that *at the time*, it was considered both by Files and Juzan that the original agreement had been forfeited by reason of the non-compliance by Files and Lyon with its stipulations. Should we not regard what the defendant says in his favor, as well as that portion of his answer which makes against him, the whole being irresponsive to any allegation in the bill and in reference to the same agreement? Be this as it may, we think the conclusion which the counsel for the plaintiffs in error draws from this act cannot be supported. The agreement was not such an instrument as the law required or authorised to be recorded. It was not proved or acknowledged, so as properly to be registered, if the law had been otherwise. What conceivable object could Files have had in lodging it with the clerk? To this inquiry, the record furnishes no answer. Certain it is, that he made a new agreement with Juzan different from that, and on his individual account, which is inconsistent with the idea of his insisting upon the original agreement as valid. Besides, if the ordering to be spread upon the record the original agreement, which the law did not recognise as an instrument for registration, and this too without acknowledgment or proof, be an admission by Files of its validity, as showing a joint interest in Lyon, the same argument, when applied to the subsequent registration of Files' individual deed from Juzan, which the law admitted to record, and which was duly acknowledged, would, *a fortiori*, establish

Johnson et als. v. Toulmin et als.

a contrary conclusion. When both instruments were recorded, such record would but furnish notice of inconsistent repugnant agreements, and of the abandonment of the agreement of 1813, by which Files and Lyon contracted for a joint interest, by entering into a new and different contract by which Files acquires the title exclusively in himself. We conclude, therefore, that the recording of this instrument is not sufficient to prevent the adverse claim of Files from dating contemporaneously with his possession under his deed from Juzan, and in this view, according to the legal analogy, the statute of limitations should put an end to this controversy.—See Iler v. Routh, 3 How. (Miss.) Rep. 276.

As to the defence insisted on by the counsel for Toulmin—namely, that he is a *bona fide* purchaser *without notice of Lyon's* claim, it is not made out. If he purchased without notice, the answer is too inartificially drawn to enable us so to determine. When a respondent would rest his purchase upon this defence, he must deny notice fully and positively though it be not charged in the bill, and if facts be charged from which such notice may be infered, he must deny such facts. Tested by this rule, the answer in this particular is wholly insufficient.

But this aside, there is another, and to our minds a most satisfactory ground upon which the relief prayed by this bill should be denied.

The contract under which complainants claim to have derived their equity, was entered into near thirty-four years before the filing of the bill. It was executory, requiring the vendor of their ancestor, before his interest in the land could completely attach, to pay a large sum of money. There is no satisfactory evidence afforded by the record before us, that he ever paid one dollar. But conceding that he made the payment of $250, which is endorsed on the agreement, on the day it was executed, this inconsiderable sum is all that, with any plausibility, can be claimed for him. Since then, the only recognition of the contract is his sale to Johnson, in 1816. He takes no steps whatever to complete the contract,—no demand for rents and profits, but so far as the record discloses, there has been a silent, continuous acquiescence since the purchase by Files of his exclusive claim and possession. When the contract was made, in 1813, the country was comparatively unimproved. It was

before the change of flag, and it was then difficult to determine any thing respecting the prospective appreciation of the land in value. Lyon leaves the country voluntarily and never returns. These, and other circumstances bring this case within the principle frequently recognised by the courts of equity, as well as by the elementary writers upon the subject, "that long acquiescence and laches by a party out of possession, productive of much hardship and injustice to others, cannot be excused except by showing some actual impediment or hindrance caused by the fraud or concealment of the party in possession, which will appeal to the conscience of the chancellor."—See Wagner et al. v. Baird et al. 7 How. (U. S.) Rep. 234, and cases cited. It has well been observed, that though no statute of limitations apply, yet the court of equity, acting upon a principle peculiarly its own, founded on the lapse of time and the staleness of the demand, in its desire to promote the peace and repose of society, will not interfere to grant relief when there has been gross laches in prosecuting rights, or long acquiescence in the assertion of adverse claims.—See case above cited; and Juzan v. Toulmin, 9 Ala. 694, and cases cited. Here, there has not only been gross neglect in the assertion of rights, but a total failure to comply, on the part of Lyon, with the stipulations of the contract in the payment of the money which he covenanted to pay before he could obtain a title to the land. This is of itself, in our opinion, a sufficient reason to refuse relief. In this country, where the price of lands is so fluctuating—where they so frequently change hands, there is more reason for discouraging stale and antiquated demands in respect of their purchase, and for requiring the exercise of reasonable diligence in the prosecution and assertion of rights relating to them, than in those countries where such description of property has a more permanent and fixed value.

After the most mature deliberation we have been able to give this case, we are satisfied the decree of the chancellor, denying the relief prayed, should be *affirmed.*