(81 South. 17)

TURNER et al. v. TURNER et al.
(5 Div. 711.)

(Supreme Court of Alabama. Jan. 23, 1919.)

1. TENANCY IN COMMON ⚯15(10)—ADVERSE POSSESSION—EVIDENCE—SUFFICIENCY.

In a suit for partition of land, evidence *held* to warrant a finding that defendants had acquired title by adverse possession.

2. TENANCY IN COMMON ⚯15(1)—ADVERSE POSSESSION—COLLECTION OF RENT.

From the exclusive, uncontested receipt of rents and profits of land an ouster is inferable, by reason of which, if continued for 20 years, title by prescription results.

. Appeal from Circuit Court, Tallapoosa County; S. L. Brewer, Judge.

Bill by J. M. Turner and others against L. L. Turner and others. From decree for defendants, complainants appeal. Affirmed.

James W. Strother, of Dadeville, for appellants.

George A. Sorrell, of Alexander City, for appellees.

SAYRE, J. More than 45 years ago Jesse M. Turner died seized and possessed of a tract of 510 acres of land in Tallapoosa county. Deceased left surviving him his widow, Sarah P. Turner, and five children. He left a will, of which his widow was nominated and appointed sole executrix, directing that she sell his property, real and personal, and divide the proceeds equally between herself and the children, each child to receive his or her share on arriving at legal age. Executrix made an effort to sell the land through the agency of the probate court, and became the purchaser at the sale so procured; but it seems that no deed was made to her, and, in any case as to that, the title remained unaffected by that proceeding. Wilson v. Holt, 83 Ala. 528, 3 South. 321, 3 Am. St. Rep. 768; Snow v. Bray, 73 South. 542.[1] In 1916 appellants, children of J. Fletcher Turner, then deceased, grandchildren of Jesse M. Turner, filed this bill praying for a sale in lieu of partition of a tract of land consisting of 400 acres of the land left by Jesse M. Originally A. G. and E. A. Turner were made parties defendant; but, each of the named defend-

ants having answered denying any right, title, or interest in the land, and the answer of A. G. showing that he had claimed to own the land in severalty, but had disposed of his interest to L. L. Turner, his wife, the bill was amended so as to bring her in as a party defendant.

Very satisfactorily the proof showed that shortly after the proceeding in the probate court, in 1872 or 1873, Sarah P. Turner undertook to set apart to Fletcher Turner— so the witnesses commonly referred to J. Fletcher Turner—as his share of his father's estate, 100 acres of the land left by her husband, and that he purchased of her 10 acres besides; but this transaction probably rested in parol; at least no deed is shown in evidence. However, Fletcher went into possession, and it seems that his ownership, thus acquired, has never been questioned. In 1884 or 1885 the interests of Sarah P. and E. A. passed into A. G. and John J.; the children, other than those named, having died. All this was probably by parol; but A. G. and John J. went into possession and so remained until 1889, when the latter died. Thereupon A. G., on consideration that he would pay, as he did, the debts of John J., took over the interest of John J. from their mother—this, too, apparently by parol. From the date of this last-mentioned transaction down to the filing of this bill, about 27 years, A. G. and his wife, L. L., the former having conveyed to the latter in 1911, have been in the exclusive possession of the land in suit, collecting rents, paying taxes, and claiming to own the land in severalty. It is true that from 1889 to 1909 A. G. Turner was personally absent from the property, residing in Lee and Shelby counties, and that during that time Fletcher Turner let the property to tenants, collected rents, and exercised over it a general supervision and management; but all this was done by him expressly for and in the name of his brother, the defendant A. G. Turner, to whom, as sole owner, he accounted for all his dealings with the property. In 1909 A. G. Turner returned to live upon the property. The overwhelming weight of the testimony shows that Fletcher at all times during his management of the property spoke of and dealt with it as belonging to his brother, nor was there at any time prior to the death of Fletcher Turner, in 1914, any assertion of right by him, nor any interruption of the defendant A. G. Turner's peaceable and exclusive possession and enjoyment of the premises or their usufruct.

[1, 2] The foregoing facts, as we have endeavored to state them from the record, briefly, but fairly, call in our judgment for the application of the principle which controlled the decision in Johnson v. Toulmin, 18 Ala. 50, 52 Am. Dec. 212, Kidd v. Borum, 181 Ala. 144, 61 South. 100, Ann. Cas. 1915C, 1226, Miller v.

---

⚯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] 198 Ala. 398.

Vizzard Investment Co., 195 Ala. 467, 70 South. 639, and Jones v. Rutledge, 80 South. 35,[2] where, in common with the modern authorities, it was affirmed, in effect, that from the exclusive uncontested receipt and retention of the rents and profits an ouster is inferable, and, if sufficiently long continued—20 years in this state—that title by prescription results. Such an inference is reasonable under the circumstances, because men do not ordinarily sleep on their rights for so long a period. Joyce v. Dyer, 189 Mass. 64, 75 N. E. 81, 109 Am. St. Rep. 603, note.

It results, therefore, that the bill of appellants in the circuit court in equity was correctly dismissed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.