**WEAVER et al. v. BLACKMON.**
**(7 Div. 490.)**

(Supreme Court of Alabama. March 26, 1925. Rehearing Denied April 30, 1925.)

1. **Appeal and error** ⬅**1052(8)—Errors in admitting evidence without injury, if affirmative charge with hypothesis correctly given.**

If, under legal evidence admitted affirmative charge with hypothesis was correctly given for defendant, any errors in rulings on admission of evidence were without injury to plaintiffs.

2. **Adverse possession** ⬅**112—Plaintiff making prima facie case by showing legal title and right to possession; defendant had burden of proof as to adverse possession.**

In ejectment plaintiffs showing legal title to some interest in land, and right to possession when suit was commenced, made out prima facie case, and defendant had burden of establishing defense of superior title by adverse possession.

3. **Tenancy in common** ⬅**14—Conveyance by some of heirs to whom land had descended operated as a disseisin of others.**

Conveyance by some of heirs to whom land had descended operated as disseisin of other heirs, in view of Code 1896, §§ 1541, 2795, 2807, where grantees each entered into possession under deeds purporting to convey whole title in fee, with general covenants of warranty, and their respective possessions were exclusive and adverse without interruption for over twenty years after youngest of other heirs reached majority; recital in note of one grantee that amount should be abated if grantor's title proved defective, and grantee's request for quitclaim deed from other heirs not constituting admissions of latters' title.

Appeal from Circuit Court, Calhoun County; S. W. Tate, Judge.

Action in ejectment by Elisha V. Weaver, Mollie W. Hanna, and Sarah M. Weaver against Ross Blackmon. Judgment for defendant, and plaintiffs appeal. Affirmed.

Lapsley & Carr, of Anniston, for appellants.

Title of plaintiffs being conceded, defendant cannot sustain his claim of title based on an equitable claim of plaintiffs' cotenants; plaintiffs were entitled to the affirmative charge. Woods v. Montevallo C. & T. Co., 84 Ala. 560, 3 So. 475, 5 Am. St. Rep. 393; Standifer v. Swann & Billups, 78 Ala. 88; Hooper v. C. & W., 78 Ala. 213; Sample v. Reeder, 107 Ala. 227, 18 So. 214; Collins v. Johnson, 57 Ala. 304; Warvelle on Ejectment, § 431; Trufant v. White, 99 Ala. 526, 13 So. 83. Defendant's possession was not, as matter of law, adverse to plaintiffs. The issues should have been submitted to the jury. Hays v. Lemoine, 156 Ala. 465, 47 So. 97; Lecroix v. Malone, 157 Ala. 434, 47 So. 725; Criswell v. Altemus, 7 Watts. (Pa.) 565;

Potts v. Coleman, 67 Ala. 221; Gulf Red Cedar Co. v. Crenshaw, 148 Ala. 343, 42 So. 564; Williams v. Higgins, 69 Ala. 517. If a party claims only a limited interest, the law will not, contrary to his intentions, enlarge it into a fee. Warvelle on Eject. § 431; Sample v. Reeder, supra.

Knox, Acker, Sterne & Liles, of Anniston, for appellee.

Possession of a tenant in common for ten years after ouster of cotenants, or notice to them of adverse claim, will constitute a bar to recovery by a tenant out of possession. Kidd v Borum, 181 Ala. 144, 61 So. 100, Ann. Cas. 1915C, 1226; Johns v. Johns, 93 Ala. 239, 9 So. 419. Conveyance by a tenant in common of entire interest to a stranger, who goes into possession, constitutes adverse possession against other tenants. Riggs v. Fuller, 54 Ala. 146; Walker v Crawford, 70 Ala. 574. Possession for 20 years by a tenant in common or those claiming under him will bar tenants out of possession. Miller v. Vizzard, 195 Ala. 467, 70 So. 639; Jones v. Rutledge, 202 Ala. 213, 80 So. 35; Turner v. Turner, 202 Ala. 515, 81 So. 17; Dew v. Garner, 207 Ala. 353, 92 So. 647, 27 A. L. R. 5; Short v. De Bardeleben Coal Co., 208 Ala. 356, 94 So. 285.

MILLER, J. This is an ejectment suit for an undivided three-eighths interest in 330 acres, more or less, of land, by Elisha V. Weaver, Mollie Weaver Hanna, and Sarah M. Weaver against Ross Blackmon. The defendant pleaded general issue, adverse possession of the land for more than 10 years before the suit was commenced, and adverse possession of the land for more than 20 years before filing of the suit. The jury returned a verdict in favor of the defendant, and, from a judgment thereon by the court, this appeal is prosecuted by the plaintiffs.

[1] The court gave the general affirmative charge with hypothesis in favor of the defendant, which he requested in writing. There are 23 errors assigned. Nearly all relate to rulings of the court on admission of evidence over objection of plaintiffs. If, under the legal evidence offered and admitted, the affirmative charge with hypothesis was correctly given by the court, then the other errors, if any, of the nature noted were without injury to the plaintiffs, and we need not discuss and consider them. Water Co. v. Mobile, 125 Ala. 178, 27 So. 781; Ala. Red Cedar Co. v. Tenn. Val. Bk., 200 Ala. 622, headnote 6, 76 So. 980; Merriweather v. Sayre M. & M. Co., 182 Ala. 666, 62 So. 70; New Brunswick Fire Ins. Co. v. Nichols, 210 Ala. 63, 68, 97 So. 82.

The record, the motion for new trial, and briefs of the parties present practically and primarily one question: Did the court err in giving that general charge for the defendant?

The plaintiffs claim title to a three-eighths interest in this land through deed from their father, Elisha V. Weaver. They introduce two deeds conveying this land to their father, both dated September 21, 1860, one executed by Nathaniel Easterwood and the other by Jemima Easterwood; one names the consideration $3,000, and the other states for value received.

The evidence shows their father went into and continued in possession of this land under these conveyances until his death in August, 1887. These deeds were duly filed and recorded on the dates they were executed. The father of the plaintiffs signed a deed on April 20, 1886, conveying this land to his 7 children and his stepchild by his first wife. This conveyance was probated by one of the subscribing witnesses on December 6, 1887, after the grantor's death, and it was filed for record on December 6, 1887.

It is questionable under the evidence whether the grantor ever delivered this conveyance to the grantees. There is no evidence as to a delivery of it during his lifetime. But this is immaterial, as there is no doubt from the evidence that the legal title to some interest in the land vested at one time in the plaintiffs. If by this conveyance, then one-eighth interest each; and if by inheritance from their father, then one-seventh interest each. Their father was married twice. His first wife was a widow with one child, Emma F. Wright, at the time he married her. There were 4 children of this marriage. This wife died, and he married again, and there were 3 children by this marriage— the plaintiffs in this case. This conveyance by Elisha V. Weaver named this stepchild and his 7 children as grantees. Four were minors at the time, and Thomas S. Weaver, a son, was named as trustee therein for them. Three of the minors were the plaintiffs in this cause. The plaintiffs were born as follows: Elisha V. Weaver in 1875, Mollie Weaver Hanna in 1872, and Sarah Weaver in 1878.

[2] The evidence for the plaintiffs made out a prima facie case showing plaintiffs each owned at one time from their father either an undivided one-eighth or one-seventh interest in this land, and were entitled to the possession of it. This shifted the burden of proof on the defendant to establish his defense—a superior title by adverse possession. Plaintiffs show no possession by them of the land, but do show a legal title to some interest in the land, and the right to possession of it when the suit was commenced on June 30, 1923, which makes out a prima facie case entitling them to recover. Carpenter v. Joiner, 151 Ala. 454, 44 So. 424.

[3] There was evidence for the defendant that the plaintiffs' father used the money of his first wife in purchasing this property, and at his death her 5 children claimed this land, but agreed for the administrator of his

estate to use the rent for 3 years from 1887 to 1890, after his death, to aid in paying his debts; and in 1890 these 5 children of his first wife went into possession of this land, claiming the whole of it, collecting and retaining the rents from it, annually, from 1890 to 1903. Elisha Weaver, one of the plaintiffs, was informed by his half-brother that this land was purchased by their father with money of his first wife, and that the plaintiffs, the children of the second wife, had no interest in this land; that it belonged to the children of the first wife; and that the plaintiffs never received any rent from it at any time.

In July, 1902, S. E. Weaver, a son by the first wife, sold and conveyed an undivided one-fifth interest in this land to S. G. Wright, who had married his sister, Emma Weaver. Mattie Weaver, daughter of the first wife, married G. W. S. Lloyd. These 5 children of the first wife of Weaver, deceased, were in continuous and exclusive possession of this land, collecting and using all the rents, from 1890 until they sold and conveyed it to T. J. Jones on January 2, 1903. This conveyance purported to convey to Jones the entire title to the lands in controversy. Jones, the grantee, in person or by tenants, was in continuous and adverse possession of this land from his purchase of it in 1903 until he sold and conveyed it by deed to George W. Eichelberger on December 16, 1911, and this deed purported to convey the entire fee in the land to the grantee. Eichelberger, in person or by tenants, was in continuous and adverse possession of this land from his purchase of it until he sold and conveyed it on December 15, 1913, to the defendant, Ross Blackmon. This deed purported to convey the entire title in the land. Blackmon, in person or by tenants, was in continuous and adverse possession of this land from his purchase of it in 1913 until this suit was commenced on June 30, 1923. The deed to Jones was duly recorded on January 28, 1904, the deed to Eichelberger was duly recorded on December 28, 1911, and the deed to Blackmon was duly recorded on December 24, 1913.

The parties agreed that this land was annually listed for taxes from 1903 to 1911, both inclusive, by T. J. Jones, for 1912 and 1913, by G. W. Eichelberger, and from 1914 to 1923, both inclusive, by Ross Blackmon, and the taxes on it for each of the years named were paid by the respective persons to whom it was respectively assessed.

All of the plaintiffs were of age in 1899. This suit was commenced on June 30, 1923. This was more than 23 years after the youngest plaintiff arrived at the age of majority. This was more than 20 years after T. J. Jones purchased by deed the entire title to this land on January 2, 1903, and went into adverse possession of it. Elisha V. Weaver, one of the plaintiffs, testifying in his own behalf stated:

"I left the state of Alabama in 1896, some 9 or 10 years after the death of my father; Mrs. Hanna left the state about the year 1902. Sarah Weaver left Alabama about 1894 or 1895, and afterwards came back to live a few years here, and then went back to Oklahoma in 1902, and has since been a resident of Oklahoma. She left here about 1894 and returned a few years later, about 1898, and then lived here until 1902; I believe she left the state a little before Mrs. Hanna did. I do not know who was in possession of the land involved in this suit in 1896; I was not in possession of it, and have never received or collected any rent from it, and have never been in possession. Neither Mrs. Hanna or Miss Weaver were ever in possession of the land to my knowledge, nor did they receive any rent from it, nor pay any taxes or assess it for taxes."

The "Mrs. Hanna and Miss Weaver" mentioned by him are the other plaintiffs in the case. Elisha V. Weaver in his testimony also stated:

"T. S. Weaver * * * before I left here * * * told me that his mother's money paid for this place, and that it belonged to the heirs of his mother. * * * He told me that this Clear Creek farm was paid for by the money that belonged to his mother, which I couldn't dispute; I didn't know. In each and every conversation I had with him, he said that this land was paid for by money that belonged to his mother and belonged to the five heirs"—her children.

More than 25 years before this suit was commenced Elisha V. Weaver, one of the plaintiffs, admitted that he had actual notice that the 5 heirs of the first wife of his father were claiming this land adversely to him; that he was never in possession of it, never collected any rent from it, nor assessed it for taxes nor paid any taxes on it.

In Turner v. Turner, 202 Ala. 515, 81 So. 17, this court wrote:

"From the exclusive uncontested receipt and retention of the rents and profits an ouster is inferable, and, if sufficiently long continued—20 years in this state—that title by prescription results. Such an inference is reasonable under the circumstances, because men do not ordinarily sleep on their rights for so long a period."

In Riggs v. Fuller, 54 Ala. 141, this court wrote:

"The grantor was one of the heirs to whom the lands had descended. A sale and conveyance by him of the entire fee to a stranger, who takes possession claiming the exclusive title, operates a disseisin of the other heirs, and converts the possession of the stranger into an adverse possession, which, if continued the length of time prescribed by the statute of limitations, will bar the entry of the other heirs."

The foregoing was quoted with approval in Dew v. Garner, 207 Ala. 354, 92 So. 647, 27 A. L. R. 5, and the court then approved Mr. Freeman in his note to the case of Joyce v.

Dyer, 189 Mass. 64, 75 N. E. 81, 109 Am. St. Rep. 603, as follows:

"There is little, if any, dissent from the proposition that where a cotenant conveys to a stranger to the title by a conveyance appropriate in form to transfer an estate in severalty, and the grantee enters into exclusive possession of the property thereunder as a claimant in severalty, this is an ouster of the other cotenants, of which they must take notice, and which, if sufficiently long continued, bars them of all right to the property."

See, also, Walker v. Crawford, 70 Ala. 567; Short v. De Bardeleben Coal Co., 208 Ala. 356, headnote 4, 94 So. 285; Fielder v. Childs, 73 Ala. 567.

The deed by the heirs of the first wife conveys on its face to Jones, in 1903, the fee in whole. He went into possession of it as a stranger, not as a cotenant of plaintiffs, claimed it exclusively as his own. This conveyance and his exclusive possession under it operated as a disseisin of the plaintiffs. He continued in adverse possession of the land from 1903 until he sold and conveyed the land, the fee to the whole of it, to Eichelberger in 1911. Eichelberger went into and continued in adverse possession of the land from his purchase until he sold and conveyed it to Ross Blackmon in 1913. Blackmon went into and continued in adverse possession of it from his purchase until this suit was commenced on June 30, 1923. Jones, Eichelberger, and Blackmon were each strangers, not cotenants of plaintiffs. They each entered into possession of this land under deeds purporting to convey the whole title in fee to the land, with general covenants of warranty, and they each claimed the land exclusively. The evidence without dispute shows their respective possessions of the land was continuous, exclusive, and adverse from January 2, 1903, until this suit was commenced on June 30, 1923. These respective conveyances, and the exclusive and adverse possession by the respective grantees of the land thereunder, operated as a disseisin of the plaintiffs, an ouster of them, of which they must take notice, and this exclusive and adverse possession continued without interruption for more than 20 years. This was sufficiently long to bar the plaintiffs of all right to the land, and to perfect the title of the defendant to it. The evidence without conflict established the pleas of adverse possession of 10 years and 20 years filed by the defendant. The court under the evidence properly gave the general affirmative charge, with hypothesis in favor of the defendant, which he requested in writing. Dew v. Garner, 207 Ala. 353, 92 So. 647, 27 A. L. R. 5; sections 1541, 2795, and 2807, Code 1896; Riggs v. Fuller, 54 Ala. 141, headnote 4; L. & N. R. R. Co. v. Philyaw, 88 Ala. 264, headnote 2, 6 So. 837; Miller v. Vizzard Inv. Co., 195 Ala. 467, 70 So. 639; Short v. De Bardeleben, 208 Ala. 356, 94 So. 285; Jones v. Rutledge, 202 Ala. 213, 80 So. 35; Turner v. Turner, 202 Ala. 515, 81 So. 17.

The consideration for the conveyance of the land by T. J. Jones to George W. Eichelberger was $1,718.75, and a note for $1,031.25, payable January 15, 1913. This note has the following written on it, signed by T. J. Jones, and H. C. Jones, his wife, to wit:

"This note is given for a part of purchase money of a tract of land located in section 22, township 15, range 6, in Calhoun county; if any suit should be begun to try the title to said land before the maturity of this note, the note shall not be paid until the suit is settled, and if the title of said Jones should fail in whole or in part, the amount of this note is to be abated to the extent of the damage sustained by the maker on account of such failure of title."

This contract as to part of the consideration of the purchase price of the land shows caution, prudence, and care of the vendee as to any defect that might develop in the title, and shows confidence and faith of the vendor in the title sold and conveyed, and neither the vendor nor the vendee thereby recognize or admit the plaintiffs have any interest in or title to the land. Jones v. Rutledge, 202 Ala. 213, 80 So. 35.

The plaintiffs introduced in evidence a letter written by the defendant, Ross Blackmon, to plaintiffs, dated January 18, 1917, enclosing a check for $5 and a quitclaim deed for them to execute to him to this land. The appellants insist this general affirmative charge, with hypothesis in favor of the defendant, should not have been given, as the defendant by this letter and acts recognized that plaintiffs had an interest in the land. These facts do not militate against the giving of the charge. The letter clearly states the purpose for which it was written. It not only does not admit but expressly denies that plaintiffs have any interest in or title to the land. It states the source of defendant's title, and among other things he writes:

"While there is no title in the second set of children of Mr. Weaver, I want to get a quitclaim deed to place for record in lieu of various affidavits, which I have showing the facts in the case. * * * While I do not need this deed to perfect my title, you can, as a business man, readily understand that the facts in this case might not be generally known."

This, under the circumstances of this case, does not tend to show any admission by the defendant that plaintiffs have any meritorious claim to the land, but he expressly states there is no title to the land in them. Jones v. Rutledge, 202 Ala. 213, 80 So. 35; Ala. F. & I. Co. v. Broadhead, 210 Ala. 545, 98 So. 789.

It results that the court properly gave the general affirmative charge, with hypothesis in favor of the defendant, which he requested

in writing; and the judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.