172 So. 275

**BLACK et al. v. BLACK et al.**

**3 Div. 172.**

Supreme Court of Alabama.

Jan. 21, 1937.

Calvin Poole and Powell & Hamilton, all of Greenville, for appellants.

426

Rogers & Rogers, of Greenville, for appellees.

**GARDNER, Justice.**

The original bill seeks a sale of 160 acres of land in Butler county for division among tenants in common. The parties thereto claim as heirs of G. W., or Wash Black, their brother.

There was a petition of intervention by a large number who claim an interest in the property through one Robert L. Black, who, they insist, owned the land at the time of his death during the War Between the States.

Robert Black left three brothers, James M., Litel, and Hugh, and also three sisters, Eleanor, Susie, and Bethenia, the latter being known as E. B. Black.

Wash Black, through whom the parties to the original bill claim title, was the son of Litel Black, one of the brothers of Robert Black, the original owner. The three sisters (Eleanor, Susie, and Bethenia) were on the property at the time of the death of their brother, and continued. to so reside to the time of their death. Wash Black, as a young man, moved on the place with these three sisters of Robert and remained there until his death in March, 1934. Neither Wash nor any of the three sisters of Robert ever married. Bethenia, or E. B., Black was the last of the sisters to die, dying in 1916.

But, in August, 1910, and after the death of her other sisters, Bethenia executed a warranty deed purporting to convey to Wash Black the entire title to the land in controversy for a recited consideration of $500 which deed was duly recorded in November following. Whether Litel Black, the father of Wash, was then living the record does not indicate. If so, then Wash Black was a stranger to the title, and his possession thereunder would constitute an ouster of the cotenants under the authority of Dew v. Garner, 207 Ala. 353, 92 So. 647, 27 A.L.R. 5, and Short v. De Bardeleben Coal Co., 208 Ala. 356, 94 So. 285.

But, however that may be, it is clear from the proof that Wash continued in the open and notorious possession of this property from that date to the time of his death in 1934 (a period of more than 23 years) under claim of ownership, assessing and paying the taxes thereon, cultivating the land, renting out parts of the same, disposing of some small quantity of the timber thereon, and, in short, exercising all acts of ownership as ordinarily exercised by an undisputed possession and ownership. And during all of this period there was no assertion by any of the cotenants of their rights in the premises, and no interruption of his peaceable and exclusive possession and enjoyment of the same.

Based upon the theory that men do not ordinarily sleep on their rights for so long a period (Turner v. Turner, 202 Ala. 515, 81 So. 17), this court is committed to the principle that, under the circumstances above outlined, the entire title vests in such occupant under the doctrine of prescription (Miller v. Vizzard Investment Co., 195 Ala. 467, 70 So. 639; Copeland v. Martin, 201 Ala. 472, 78 So. 378; Turner v. Turner, supra; Heath v. Lewis, 200 Ala. 509, 76 So. 451; Alabama Fuel & Iron Co. v. Broadhead, 210 Ala. 545, 98 So. 789; ·

Jones v. Rutledge, 202 Ala. 213, 80 So. 35) which, as often here reiterated, is a rule of repose (Oxford v. Estes, 229 Ala. 606, 158 So. 534).

Council for the interveners, recognizing the rule of these authorities, argue that the case is brought within the influence of Bracken v. Roberson, 220 Ala. 152, 124 So. 237, and we may add also that of Copeland v. Martin, 201 Ala. 472, 78 So. 378, as considered on rehearing. But in those cases there was competent proof that before the passing of the prescriptive period of 20 years the occupant had recognized the asserted claim of his cotenants, as in Copeland v. Martin, supra, or that the possession was in the beginning permissive, and so continued and the occupant recognized and acknowledged the rights of her cotenants, as in Bracken v. Roberson, supra. Here it is largely a question of competent proof.

To bring the case within the influence of these latter authorities, interveners rely in the main upon the testimony of I. N. Black, one of the interveners claiming under descent from Robert Black, and that of one Joe Poole. As to I. N. Black's conversation with Wash Black, the interveners are confronted with the statute (section 7721, Code 1923) which clearly renders this testimony inadmissible. Williams v. Dent (Ala.Sup.) 170 So. 202.[1] As to the testimony of Joe Poole concerning conversation with Wash, it is to be observed this was just prior to his death, and long after the completion of the prescriptive period of 20 years, and, in addition, was of a very general and uncertain nature, insufficient within itself to overturn the great weight of the evidence as to the long-continued claim of ownership and uninterrupted possession on the part of Wash Black.

These latter observations are likewise applicable to some of the testimony on cross-examination of complainants' witness Lehman Thomas.

We have not overlooked the testimony for interveners tending to show the possession of the sisters and Wash was permissive, and so understood by the other heirs, but, upon examination, we find their testimony was purely hearsay, or merely expressive of their own undisclosed intention, and by no competent proof in any manner traced to Wash Black. This character of proof was urged upon and considered by the court in Miller v. Vizzard Investment Co., supra, to which the opinion replied: "It is not claimed, however, and the evidence fails to indicate, that there was any agreement with or notice to him [the occupant, we interpolate] to that effect, or that his continued possession was permissive in any legal sense."

Reduced to the last analysis, it appears clearly established by the legal proof, which alone we are here authorized to consider, that the surviving brothers of Robert Black and their descendants took no steps for a period of more than 65 years to show they were asserting any claim of ownership to this property. The three sisters died upon the property, the last survivor deeding it, in 1910, to Wash Black, and he continued in the uninterrupted possession for more than 23 years under claim of ownership after the execution and recordation of his deed, cultivating and renting the land, assessing and paying the taxes thereon, and otherwise exercising all acts of ownership. There is no sufficient competent proof to overthrow these facts or destroy their effect.

It results, therefore, that, in our opinion, the title was perfected in Wash Black, and that his heirs alone, as named in the original bill, are entitled to share in the proceeds of the sale.

The decree will therefore be reversed, and the cause remanded to be proceeded with in accordance with the views herein expressed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.

---

[1] Ante, p. 109.