184 So.2d 120

**Annetia Averett THOMPSON**

**v.**

**Warren E. ODOM et al.**

**I Div. 70.**

Supreme Court of Alabama.

March 3, 1966.

Leo L. Crain, Mobile, for appellant.

D. R. Coley, Jr., Mobile, for appellees.

LAWSON, Justice.

This is an appeal from a final decree of the Circuit Court of Mobile County, in Equity.

Mary J. Odom, a widow, died intestate in Mobile County on May 14, 1936, survived by several children. The record and brief contain conflicting statements as to the date of her death, but it seems to us that May 14, 1936, is the correct date. We are not certain as to the number of children who survived Mary J. Odom. There were either nine or ten. Perhaps she was survived by nine children and one step-child. We do not think these uncertainties are material to the questions presented on this appeal, but reference is made to them for the sake of accuracy.

At the time of her death Mary J. Odom was the owner of six hundred acres of land in Mobile County, situated approximately three miles north of Citronelle. The land was encumbered by a mortgage in the principal sum of $400 which Mary J. Odom had executed to one J. Tyler Turner.

On December 9, 1938, Turner transferred the mortgage to B. C. Pringle and M. J. Plemmons. Shortly thereafter, on January 3, 1939, Pringle and Plemmons foreclosed the mortgage and purchased the mortgaged lands at the foreclosure sale.

On September 11, 1939, B. C. Pringle and M. J. Plemmons conveyed the six hundred acres of land to Hattie V. Salter and Cora H. Plemmons, both of whom are daughters of Mary J. Odom. Cora H. Plemmons is the wife of M. J. Plemmons and Hattie V. Salter is the administratrix of the estate of her mother. Two other children of Mary J. Odom, namely, Warren Odom and Mrs. Fannie L. Williams, had previously sought to redeem from the foreclosure sale.

On February 7, 1940, Warren E. Odom, Fannie L. Williams, Amanda Odom Walker, Alma Grimes, George U. Odom, Means B. Odom and George Howard Odom filed a bill in the Circuit Court of Mobile County, in Equity, against Hattie V. Salter, Cora H. Plemmons and Maggie Odom. Apparently Hattie V. Salter and Cora H. Plemmons are sisters of all the complainants and

Maggie Odom may be a half-sister of the complainants. The bill averred that the complainants and respondents were all the heirs at law and next of kin of Mary J. Odom, deceased. The bill sought to have the land owned by Mary J. Odom at the time of her death sold for division of the proceeds among the complainants and the respondents. Other relief, not necessary to mention here, was also sought. That cause was given docket number 13,754. Grounds of demurrer addressed to the bill as a whole and to certain aspects were overruled on July 9, 1940. The respondents Hattie V. Salter and Cora H. Plemmons appealed to this court. We affirmed on December 19, 1940. Rehearing was denied on January 23, 1941. Salter v. Odom, 240 Ala. 462, 199 So. 687. In affirming the decree of the trial court we held, in effect, that under the averments of the bill the purchase of the suit property by Hattie V. Salter and Cora H. Plemmons was, in effect, a redemption by them as co-tenants, which inures to the benefit of their brothers and sisters, all of whom were parties to the suit.

Shortly after our decision in Salter v. Odom, supra, and on May 11, 1942, Hattie V. Salter and Cora H. Plemmons executed a quitclaim deed as parties of the first part to W. M. Averett as party of the second part, which deed was placed on record on October 2, 1942. The granting clause of that instrument reads:

"WITNESSETH, that the Parties of the First Part, in consideration of the Sum of $160.00 (one hundred sixty) lawful money of the United States, paid by the Party of the Second Part, do hereby remise, release and quitclaim unto the Party of the Second Part, ALL of the following described Real Property situated in Mobile County Alabama, as follows N.W 1/4 of N.E 1/4 Sec.24 T2N R3W together with the appurtenances and all the estate and rights of the Parties of the First Part in and to said premises."

The property described in the instrument of May 11, 1942, is a part of the land which

Mary J. Odom owned at the time of her death and to which Hattie V. Salter and Cora H. Plemmons had acquired a conveyance in the manner outlined above.

On September 5, 1942, Hattie V. Salter and Cora H. Plemmons executed a similar quitclaim deed to Annetia Averett, which deed was placed on record on October 2, 1942. The granting clause of that deed is in all material respects the same as that in the deed from the same grantors to W. M. Averett except as copied in the record before us it recites a consideration of $55 and the land described therein was the "S.W ¼ of S.E. ¼ Sec. 13, T. 2 N. R. 3 West, containing Forty Acres, more or less, * * *."

The property described in the deed last referred to is also a part of the land owned by Mary J. Odom at the time of her death and which Hattie V. Salter and Cora H. Plemmons had purchased. The consideration shown in the deed as copied in the record may not be correct. There are indications in the record that $55 was only the down payment and that a total of $160 was paid by Annetia Averett for the described property.

W. M. Averett and Annetia Averett were not made parties to cause No. 13,764 and they did not intervene therein. We are not advised as to why so much time elapsed after our action overruling the application for rehearing in Salter v. Odom, supra, on January 23, 1941, before a final decree was rendered in said cause No. 13,764 on June 24, 1957. The record does show that oil was discovered in the vicinity of Citronelle in 1955 and perhaps that event was the reason that a cause which had been dormant for so long was reactivated.

The trial court in the decree of June 24, 1957, decreed that the then living complainants and the heirs at law and next of kin of two of the complainants who had died since the original bill was filed, together with the respondents, were the joint owners and tenants in common of all the land owned by Mary J. Odom at the time of her death,

subject to certain oil, gas and mineral leases and rights and a surface easement. For the purposes of that decree the said land was considered as consisting of nine separate parcels. The land described in the deed of May 11, 1942, from Hattie V. Salter and Cora H. Plemmons to W. M. Averett was designated Parcel 5, while the land described in the deed of September 5, 1942, from the same grantors to Annetia Averett was referred to as Parcel 2. The interest of each of those found to have an interest in the six hundred acres of land was fixed.

The decree of June 24, 1957, although W. M. Averett and Annetia Averett were not parties to the litigation and had not intervened, contained the following provision:

"* * * but the Court does herein further find, ADJUDGE AND DECREE that the intervenors Annetia Averett and W. M. Averett have not established nor do they have any right, title or interest whatsoever in or to the lands involved herein, or in or to any parcel or portion thereof."

Having determined that the subject property could not be equitably divided in kind, the Register was ordered to sell the surface interest of all those found by the court to have such an interest, after giving notice of the sale.

The sale was conducted on September 17, 1957. Prior to the sale Annetia Averett, through her attorney, gave notice to the Register and "to any and all bidders and prospective purchasers of Parcels Two and Five" that she was the owner of the fee simple title to those parcels. As to Parcel 2, her claim of ownership was based on the deed to her from Hattie V. Salter and Cora H. Plemmons under date of September 5, 1942, and an adverse holding thereunder, together with the exclusive payment of taxes for more than ten years. With respect to Parcel 5, she claimed title under a deed from one A. B. Averett, with averments tending to show adverse possession by her and her predecessors in title for

more than ten years. She also averred the exclusive payment of taxes on the property by herself and her predecessors in title for more than ten years. Annetia Averett, prior to the sale, also gave notice that she had not been a party to cause No. 13,764 and stated that consequently she was not bound by the decree in that cause.

In view of the notice given by Annetia Averett, the attorneys for complainants and respondents in cause No. 13,764 announced prior to the sale that Parcels 2 and 5 would be sold subject to purchaser or purchasers thereof acquiring good title; that if proper title could not be conveyed, the purchaser or purchasers would not have to complete the purchase.

At the sale held on September 17, 1957, George U. Odom, a son of Mary J. Odom, deceased, who was one of the complainants in cause No. 13,764, bought Parcels 2 and 5, to which Annetia Averett claimed title.

On November 7, 1957, Annetia Averett instituted this proceeding by filing her bill in the Circuit Court of Mobile County, in Equity, against all the persons who were held in the decree rendered in cause No. 13,764 to own an interest in the lands owned by Mrs. Mary J. Odom at the time of her death. On January 25, 1960, it being made known to the court that Means B. Odom, Sr., one of the respondents in the cause filed by Annetia Averett, had died, that action was revived against the widow of Means B. Odom, Sr., individually and as executrix, and against all of the heirs at law and next of kin of the said Means B. Odom, Sr.

In her bill Annetia Averett sets out substantially all of the facts which we have delineated above, including the decrees in cause No. 13,764 and the notice given on her behalf by her attorney prior to the sale held on September 17, 1957. She also alleged:

"Your Petitioner shows unto this Honorable Court that she does, in fact, own all of Parcels 2 & 5 of the above described property, that she has lived on it, assessed it for taxes and paid taxes on it and has exercised exclusive control over it under claim of ownership for many years, all of which is and for many years has been well known to the complainants and respondents in said cause #13,764."

The only specific prayers in the bill filed by Annetia Averett are that the trial court set aside that portion of the decree rendered in cause No. 13,764 "which purports to quiet title against this Petitioner in that part of the property covered by said decree which is hereinabove described [Parcels 2 and 5]"; and that the sale of Parcels 2 and 5 be declared null and void. The prayer for general relief reads:

"* * * Petitioner prays for such other further and different relief as the facts may warrant. If Petitioner is mistaken in the remedy hereby sought she prays for such other, further, and different relief as to this Honorable Court may seem equitable and just in the premises."

A demurrer was interposed to the bill filed by Annetia Averett by the respondents other than Hattie V. Salter, Cora H. Plemmons and Alma Grimes. After their demurrer was overruled, those respondents filed an answer wherein they admitted that all of the land owned by Mary J. Odom at the time of her death, including Parcels 2 and 5, was ordered sold for division of the proceeds by the decree rendered in cause No. 13,764 and that all of it was sold as ordered. They admitted that Annetia Averett was not a party to or intervenor in cause No. 13,764 and admitted that at the time of the sale Annetia Averett gave the notice as averred in the bill, but denied the truthfulness of the statements set forth in the notice as they related to Annetia Averett's title to Parcels 2 and 5. They denied the averments of the bill to the effect that Annetia Averett was the owner of Parcels 2 and 5 and averred in regard to her claim of ownership of those two parcels as follows:

"For further answer to the Complaint, the Respondents show that if, in fact, the Petitioner has acquired any right or interest in or to the property described herein, she acquired the interest of Hattie V. Salter and Cora H. Plemmons, who were two of the parties in Cause No. 13,764 and joint owners and tenants in common of said property with these Respondents, during the pendency of cause No. 13,764, and with notice thereof.

"Respondents deny that any possession held by the said Petitioner was adverse to their title and say and show that they are and were at the time of the sale, the owners of the entire interest in said property other than that owned by Hattie V. Salter and Cora H. Plemmons alleged to have been acquired by the Petitioner herein.

"WHEREFORE, they say that the Decree of the Court entered in said cause [No. 13,764] was valid and binding, except insofar as it decreed that the Petitioner had no right, title or interest in or two said property and sought to quiet the title against her. They further say and show that the Petitioner, if entitled to relief, is entitled only to receive the share of the proceeds of the sale of said property to which Hattie V. Salter and Cora H. Plemmons would have been entitled as parties to said suit."

Following several hearings, the first of which was on March 27, 1961, the cause was submitted for final decree on May 26, 1961. There was an order of resubmission entered on February 6, 1962. Final decree was rendered on February 23, 1962. In that decree the trial court found from the evidence taken ore tenus:

1. Annetia Averett was not a necessary party in cause No. 13,764 and "that said cause properly proceeded to decree against the parties who owned the land involved in said cause at the time the original petition for partition or sale for division was filed in said cause Numbered 13,764."

2. " * * * the purported conveyances of the property described in the bill of complaint to the Complainant or to those through whom she claimed title constituted at best an assignment only of the right, title or interest in said property of the Respondents Cora H. Plemmons and Hattie V. Salter of their proportionate shares in the proceeds of the sale of said property."

3. " * * * the evidence in said cause on behalf of the Complainant was insufficient to vest in her the title to said property by adverse possession or by prescription as against the Respondents in the cause, exclusive of Cora H. Plemmons and Hattie V. Salter."

4. " * * * Annetia Averett and W. M. Averett were not parties to the original cause, and did not intervene therein, but that the court inadvertently assuming that they had intervened in said cause but had offered no evidence in support of any claim or right to said property, adjudged in its decree entered on the 24th day of June, 1957, that they had no right, title or interest in the property involved in said cause."

Based on those findings the trial court ordered, adjudged and decreed "that said decree of June 24th, 1957 [cause No. 13,-764], be and the same is hereby amended by eliminating from said decree so much thereof as adjudges and decrees that the said Annetia Averett and W. M. Averett have no right, title or interest in or to the lands involved in said cause." The court decreed that in all other respects the decree in cause No. 13,764 was regular and correct.

The final decree of February 23, 1962, contains the following provisions:

"It is ORDERED, ADJUDGED and DECREED by the Court that the Register be and he is hereby directed to deliver the properly executed deed conveying said property to George U.

Odom, as indicated in the decree entered by the Court on the 3rd day of October, 1957, confirming said sales, upon the payment into the Registry of the Court of the sum of $2,700.00 for Parcel No. Two; and $2,525.00 for Parcel No. Five; within thirty days from the date of this decree, and that he disburse said sums to the parties to this cause as provided in said decree entered on the 3rd day of October, 1957, except that the one-tenth part of said proceeds payable to Hattie V. Salter and the one-tenth part payable to Cora H. Plemmons shall be held in the Registry of the Court for a period of six months, during which time the Complainant Annetia Averett Thompson, shall have an opportunity to propound her claim thereto; that if such claim be not filed within said time, said disbursement be made to the said Hattie V. Salter and Cora H. Plemmons."

From the decree of February 23, 1962, the complainant below has appealed to this court. The appeal is taken in the name of Annetia Averett Thompson. Apparently Mrs. Averett was divorced from her husband, George Averett, and had married one Thompson.

Appellant asserts that "the trial court erred in rendering a decree more than 270 days after the order of submission."

Equity Rule 68 provides:

"When a cause or matter has been submitted for a decree or order, such decree or order must be rendered and filed with the register within four months after the submission, or a resubmission shall be necessary."

■ As we have shown above, the cause was originally submitted for final decree on May 26, 1961. As far as we can determine, neither party filed a note of submission at that time. Such was not necessary inasmuch as the testimony was given orally before the trial judge in open court and was transcribed and filed in the cause. Equity

Rule 57; Holman v. Hall, 248 Ala. 541, 28 So.2d 629; Schmale v. Bolte, 255 Ala. 115, 50 So.2d 262; George v. George, 255 Ala. 190, 50 So.2d 744.

■ A final decree was not rendered within four months after the submission but there was a resubmission as required by Equity Rule 68. At that time the respondents filed a note of submission but, as shown above, this was unnecessary and the fact that no note of submission was filed by the complainant, the appellant here, does not affect the order of resubmission. It does not appear that there was any amendment of the pleadings or that other testimony was offered on the second submission.

■ Under the circumstances outlined above, we do not think there was such a hiatus in the proceedings as to cause the trial court to lose jurisdiction to render the decree of February 23, 1962, here under review. Tanner v. McClure, 259 Ala. 142, 76 So.2d 709; Box v. Box, 247 Ala. 291, 24 So.2d 28; Ex parte Shade, 253 Ala. 139, 43 So.2d 319.

The record contains no order expressly showing that the hearing of this cause was set for March 20, 1961, but apparently such was the case, for the record does contain an order rendered on March 14, 1961, allowing the attorneys who filed the bill on behalf of appellant to withdraw from the case, in which order appears the following: "It is further ORDERED and DECREED by the Court that the hearing of this cause on March 20th, 1961, be, and the same hereby is, continued generally." And on March 20, 1961, the trial court made the following order:

"This cause being regularly set for hearing on this day and having previously been continued by order of Court rendered March 14th, 1961, it is this day re-set for hearing on March 27th, 1961 at 10:00 o'clock A.M. and the register be, and hereby is, directed to issue a subpoena for the Complain-

ant for her attendance in Court at said time."

On March 27, 1961, the appellant, complainant below, filed a motion for continuance wherein reference was made to the orders of March 14 and March 20, 1961, and wherein it was averred

"Complainant had no knowledge that this case was specially set on March 27, 1961, until she was served with the subpoena on March 22, 1961. Complainant further shows that she had not employed further counsel because of lack of funds on her part."

The motion for continuance was denied on the day it was filed and the hearing began on that day.

Appellant asserts that the trial court abused its discretion in setting the hearing for March 27, 1961, and in denying her motion for continuance filed on that day.

There is nothing in this record which would justify a holding that the trial court erred to a reversal in setting the case for trial on March 27, 1961. Appellant was given notice of the day the case was set for trial, although we have said that in absence of statutory provision to the contrary, all parties litigant, once in court, either for themselves or through their attorneys must keep track of their case, know their status, and ascertain for themselves when their case will be tried. Averett v. Averett, 255 Ala. 606, 52 So.2d 371; Whaley v. State ex rel. Bland, 263 Ala. 191, 82 So.2d 187. The trial court no doubt ordered that notice be given appellant because counsel who had filed the bill on her behalf had been permitted to withdraw.

Nor can we say that the trial court abused its discretion in denying appellant's motion for continuance. The only grounds for a continuance were that appellant did not receive notice until March 22, 1961, and that she had not employed counsel to represent her since her original counsel withdrew. As far as the notice to appellant is concerned, there is nothing in the record to indicate that it was not served upon her in time to enable her to be ready for the trial. The case had been pending for some time. It was instituted by her and she appeared as a witness. The statement in the motion for continuance that appellant had not employed counsel apparently was not correct. On the same day the motion for continuance was filed, a "Motion for Decree Pro Confesso" was filed on behalf of appellant by a law firm, members of which appeared on behalf of appellant at the hearing on the merits held on the day the motion for continuance was filed and denied. A motion to continue a trial is addressed to the sound judicial discretion of the trial court and its refusal is not reviewable except for gross abuse. Dollar v. McKinney, 267 Ala. 627, 103 So.2d 785. The record in this case does not, in our opinion, show a gross abuse of the judicial discretion of the trial court.

The remaining argued assignments of error relate to the action of the trial court in sustaining appellees' objections to certain documents which appellant sought to introduce in evidence for the purpose of showing color of title to Parcels 2 and 5 and to the action of the trial court in "decreeing that the evidence was insufficient to vest unto appellant the title to said property by adverse possession * * *."

Appellees insist that such assignments of error cannot work a reversal of the decree here under review for the reason that adverse possession was not an issue in the trial below. In that connection appellees say in their brief as follows:

"* * * The issue was not whether the Complainant, Appellant here, could establish title by adverse possession. The sole question raised by the prayer in her bill of complaint was that this Court will 'set aside and declare void and of no force and effect that portion of its decree in said cause [13,764] which purports to quiet the title against the petitioner in that part of the prop-

erty covered by said decree which is hereafter described', and that 'the Register's sale of said Parcels 2 and 5 to George U. Odom be declared null and void.'

"The Defendants, Appellees here, in their answer stated in Paragraph 2 that at the time of entry of the original decree the parties both Complainants and Respondent were of the opinion that the complainant in that cause had intervened, and there was no contention but that this portion of the decree was entered through inadvertence and mistake.

"So actually the only question at issue was whether the Register's sale to George U. Odom of Parcels 2 and 5 be declared null and void, and this the Court did not do."

■ There was no specific prayer in the bill filed by the appellant for the court to decree that she had acquired title to Parcels 2 and 5 by adverse possession. However, under the averments of the stating part of the bill, the prayer for general relief, the averments of the answer, and the manner in which this case was tried, we are clear to the conclusion that the only issue which was actually litigated was whether the appellant had acquired title to Parcels 2 and 5 by adverse possession.

It was admitted during the course of the trial, as it was in the answer filed by the appellees, that the decree rendered in cause No. 13,764 was in error insofar as it sought to affect the rights of the appellant in Parcels 2 and 5 since she was not a party to or intervenor in that proceeding. Despite this admission, many witnesses were called on behalf of the appellant for the purpose of showing that she had acquired title to Parcels 2 and 5 by adverse possession. Appellees interposed numerous objections to such evidence offered by appellant, but they did not object on the ground that the evidence so offered was beyond the issues formulated by the pleadings. And the only testimony offered by the appellees was for the purpose of refuting appellant's claim of title to Parcels 2 and 5 by adverse possession. The record before us in this case is composed of 314 pages, the evidence covering 235 pages of the record. And all of the evidence, as we have said above, bore on the sole issue on which the case was tried below, appellant's claim of title to Parcels 2 and 5 by adverse possession.

In Fraternal Aid Union v. Monfee, 230 Ala. 202, 204, 160 So. 529, it was said: " * * * It has often been stated in our opinions that parties may frame their own issues, and thereby immaterial matters made material for that trial. * * *"

The trial court evidently considered that the matter of appellant's ownership of Parcels 2 and 5 by adverse possession was an issue in the case, for it found, as shown above, "that the evidence on behalf of the complainant was insufficient to vest in her the title to said property by adverse possession or by prescription as against the Respondents in the cause, exclusive of Cora H. Plemmons and Hattie V. Salter." True, this finding was not followed by a formal adjudication or decretal order that the appellant had not acquired ownership of the two parcels by adverse possession as against the appellees. But the finding of the court last quoted above must be considered in connection with the court's order upholding the sale of Parcels 2 and 5 to George U. Odom. When so considered the decree here under review, in our opinion, shows that the trial court considered that appellant's claim of title to Parcels 2 and 5 was an issue in the case and decided that issue against appellant insofar as the appellees are concerned.

In Walker v. Walker, 245 Ala. 154, 155, 16 So.2d 190, 192, this court said:

" * * * It is a well-settled rule that parties are restricted to the theory on which a cause is prosecuted or defended in the court below, and where both parties act upon a particular theory of the cause of action, they will not be permitted to depart therefrom when

the case is brought up for appellate review. * * *"

Appellant testified that she went into possession of Parcel 2 in December of 1939 under an oral contract with Hattie V. Salter and Cora H. Plemmons, or their representatives, whereby they agreed to convey Parcel 2 to appellant for the sum of $160; that the last installment on the agreed purchase price was paid in 1942, at which time Hattie V. Salter and Cora H. Plemmons executed to appellant the quitclaim deed to Parcel 2 to which we have heretofore referred.

But there was a conflict in the testimony as to the time when appellant went into possession of Parcel 2. The two witnesses called by appellees gave testimony to the effect that she did not go into possession until 1942 or 1943 and a witness called by appellant, the lawyer who filed the bill in cause No. 13,764, testified that she was not in possession when that bill was filed on February 7, 1940.

The witnesses were examined in the presence of the court; hence we will not say that the court could not have correctly concluded that appellant did not go into possession of Parcel 2 until 1943.

■ However, the evidence shows beyond peradventure that appellant was in possession of all of Parcel 2 as early as 1943 and that such possession had not been interrupted at the time of the trial below in 1961. At the time she entered into possession she had a fence constructed around the entire parcel. A residence, two tenant houses, chicken houses, hog pens and a dairy barn were constructed on Parcel 2. Appellant cut wood and timber from the land, which she sold and used. She began paying taxes on Parcel 2 in 1943 and continued to do so until the time of the trial. None of the appellees during that period of time had assessed the property for taxes or had paid any taxes thereon. Appellant had exclusive possession of the property from the time she went into possession of the property until the time of the trial and it is clear that she claimed ownership of the

land as against all others. For more than ten years appellant's possession of Parcel 2 was hostile and under claim of right; it was actual; it was open and notorious; it was exclusive; and it was continuous. Those are the essential elements of adverse possession. Moorer v. Malone, 248 Ala. 76, 26 So.2d 558.

■ Appellees say that with all other questions aside, when 1943 is considered as being the time when appellant's possession of Parcel 2 commenced, such possession cannot be said to have been adverse to them because at that time litigation was pending between appellees and the other heirs at law and next of kin of Mary J. Odom, deceased, concerning the ownership of all of the land owned by Mary J. Odom at the time of her death, including Parcel 2. As we have shown, that litigation involved the question as to whether the purchase of the Mary J. Odom property by appellant's grantors inured to the benefit of appellees as heirs at law and next of kin of Mary J. Odom, deceased. Title, not possession, was involved in that litigation. The appellant learned of the pendency of that litigation some time after she went into possession but, as shown above, she was not a party to the litigation and we can see no reason why the mere fact that appellant knew of the litigation between the heirs at law and next of kin of Mary J. Odom should affect her right to assert title to Parcel 2 by adverse possession. Hall v. Caperton, 87 Ala. 285, 6 So. 388. "The mere knowledge of claimant, either at the time he acquired the color of title or afterward during his possession thereunder, that others were making adverse claims does not alone impute bad faith on his part in his claim of right, title, or possession, or in the acquisition of the color of title." 2 C.J.S. Adverse Possession § 170b, p. 744.

In order to show that her possession of Parcel 2 for the ten-year period fixed by § 828, Title 7, Code 1940, was under color of title, appellant offered in evidence the quitclaim deed which Hattie V. Salter and Cora H. Plemmons executed and delivered to her

on September 5, 1942, to which we will sometimes hereinafter refer as appellant's Exhibit 1.

When appellant's Exhibit 1 was first offered in evidence, counsel for appellees objected to its admission as muniment of title or color of title. The trial court sustained the objection because it was established that the grantors, Hattie V. Salter and Cora H. Plemmons, were married women at the time they executed the deed and their husbands did not join in the conveyance. Shortly after the court's ruling sustaining the objection, one of the attorneys representing the appellees stated: " * * * we will permit it to go in, not as muniment of title, not as color of title, but for the sole purpose of showing a 'quitclaim deed on its face, and it purports to convey the title or estate in the property owned by the estate and rights of parties of the first part, in and to said premises, and that is: Cora Plemmons and Hattie Salter. It does not purport to convey the entire property." There was further discussion between counsel for appellant, counsel for appellees, and the court, following which the court admitted the deed in evidence, not as a muniment of title, or as color of title, but for the limited purpose as stated by the attorney for appellees.

Appellees insist that any error in connection with the court's action in limiting the admission in evidence of appellant's Exhibit 1 was cured by the subsequent unqualified admission of that instrument in evidence. We cannot agree. The record shows that objections of appellees to the introduction in evidence of certain other written instruments offered by appellant were sustained, but afterwards the court reversed its ruling upon the suggestion or insistence of one of the attorneys representing appellees and those instruments were admitted. But appellant's Exhibit 1, which was offered for the purpose of showing color of title, was not among the instruments or exhibits which were so admitted.

■ Under our statute (§ 73, Title 34, Code 1940) a married woman, living with her husband, the husband being of sound mind and a resident of this state, is without power to alienate her land, or any interest therein, without the assent and concurrence of the husband, expressed in writing, and contracts for the sale of her lands made by her without the assent and concurrence of her husband in the manner required by that statute, are void. Obermark v. Clark, 216 Ala. 564, 114 So. 135, 55 A.L.R. 1153. In this case it was conceded by appellant that the deed which she sought to introduce as her Exhibit 1 was void because it did not show the assent and concurrence of the husbands of the grantors, in the manner required by the statute.

■ But this court has held that the deed of a married woman, invalid for failure of her husband to join therein, is nevertheless sufficient to give color of title, so as to render the possession of the grantee adverse. Perry v. Lawson, 112 Ala. 480, 20 So. 611; Southern R. Co. v. Hayes, 150 Ala. 212, 43 So. 487. These holdings are in accord with many of our cases which hold that deeds void for various reasons were nevertheless sufficient to give color of title to possession taken under them. Several of those cases are cited in Wright v. Louisville & N. R. Co., 203 Ala. 118, 82 So. 132. See Odom v. Averett, 248 Ala. 289, 27 So.2d 479; Bell v. Pritchard, 273 Ala. 289, 139 So.2d 596; Albright v. Creel, 236 Ala. 286, 182 So. 10.

There is no contention made here that appellant's Exhibit 1 is void because it does not adequately describe the land in controversy. See Finerson v. Hubbard, 255 Ala. 551, 52 So.2d 506.

■ We hold that appellant's Exhibit 1 was not inadmissible in evidence as color of title simply because the husbands of the grantors had not joined in the conveyance.

We will explore the other reasons why it might be argued that appellant's Exhibit 1 was not admissible as color of title.

At the time that deed was executed the grantors therein, Hattie V. Salter and Cora H. Plemmons, held a deed purporting to convey to them the fee simple title to all of Tract 2, as well as to all of the other property owned by Mary J. Odom at the time of her death. The demurrer which they had filed in cause No. 13,764 had been held by this court to have been properly overruled. Salter v. Odom, 240 Ala. 462, 199 So. 687; But at that time there had been no decree rendered holding that their purchase of the Mary J. Odom property operated as a redemption by them as tenants in common which inured to the benefit of their brothers and sisters. But such a final decree had been rendered at the time appellant's Exhibit 1 was offered in evidence in the trial below.

At this point we will consider the question as to whether a deed is inadmissible as color of title simply because it was executed by one or more of several tenants in common. We answer the question in the negative.

 Our cases are in accord with what seems to be the general rule—that, where one of several cotenants conveys the joint estate by an instrument purporting to vest the fee to the entire property in a grantee *who is not a cotenant*, and the latter enters, asserting open and exclusive ownership thereof, in severalty, the cotenant not participating in the conveyance is deemed to be ousted, and, on the termination of the statutory period, title by adverse possession becomes vested in the grantee. Riggs v. Fuller, 54 Ala. 141; Dew v. Garner, 207 Ala. 353, 92 So. 647, 27 A.L.R. 5; Livingston v. Livingston, 210 Ala. 420, 98 So. 281; Weaver v. Blackmon, 212 Ala. 681, 103 So. 889; Moore v. Elliott, 217 Ala. 339, 116 So. 346; Black v. Black, 233 Ala. 425, 172 So. 275; Elsheimer v. Parker Bank & Trust Co., 237 Ala. 24, 185 So. 385; Clanahan v. Morgan, 268 Ala. 71, 105 So.2d 429. See "Title by Adverse Possession," by the Honorable Shuford B. Smyer of the Birmingham Bar, 14 Alabama Lawyer, pp. 352, 358; Annotation, 32 A.L.R.2d 1216.

Our case of Monte v. Montalbano, 274 Ala. 6, 145 So.2d 197, is in no way in conflict with the authorities cited above. In the *Monte* case the purchasers were a cotenant and a third person whose possession was never exclusive.

 The mere fact that appellant's Exhibit 1 is a quitclaim deed rather than a warranty deed does not render it inadmissible for the purpose of showing color of title. Saunders v. Kenyon, 52 R.I. 221, 159 A. 824; Waterman Hall v. Waterman et al., 220 Ill. 569, 77 N.E. 142, 4 L.R.A.,N.S., 776; Fuller v. Swensberg, 106 Mich. 305, 64 N.W. 463.

But it has been held that where land is owned by tenants in common, and one cotenant by quitclaim deed conveys only his or her interest to a third person, such as Annetia Averett, the quitclaim deed does not constitute color of title as a basis for adverse possession by such third person as against the interests of the tenants in common not joining in the conveyance. Cook et al. v. Rochford et al. (Fla.), 60 So.2d 531, 32 A.L.R.2d 1210. See Thomas v. Chapin et al., 274 Ill. 95, 113 N.E. 82. Cf. Laraway v. Larue, 63 Iowa 407, 19 N.W. 242.

On the other hand, the majority rule seems to be that a quitclaim deed executed by a tenant in common which purports to convey the entire property constitutes color of title as to the whole and is a sufficient basis on which to ground a title by adverse possession in the grantee. Moore v. Slade, 194 Okl. 143, 147 P.2d 1006; Tillotson et al. v. Foster et al., 310 Ill. 52, 141 N.E. 412; Lucas v. Ferris, 95 Conn. 619, 112 A. 165; Waterman Hall v. Waterman, 220 Ill. 569, 77 N.E. 142, 4 L.R.A.,N.S., 776; Fuller v. Swensberg, 106 Mich. 305, 64 N.W. 463.

 So we come to the question as to whether the deed from Hattie V. Salter and Cora H. Plemmons to Annetia Averett, appellant's Exhibit 1, purported to convey the entire property described in the deed or only

such interest as the grantors owned therein.

The granting clause of the deed first remised, released and quitclaimed "ALL of the following described Real Property situated in Mobile County Alabama [description of property]" but the description of the property is followed by this language: "together with the appurtenances *and all the estate and rights of the Parties of the First Part in and to said premises.*" (Emphasis supplied.)

Appellees say in brief that the language italicized above clearly shows that it was the intent of the grantors to convey only the undivided interest which the grantors owned in the described property. We do not agree. We think that when the granting clause is construed in its entirety and consideration is given to the fact that at the time the deed was executed the grantors were claiming to own all of the described property, it was the intention of the grantors to convey the entire property. Certain it is that there is nothing in this record to indicate that either the grantors or the grantee acted as if only an undivided interest was intended to be conveyed. We may also point out that the granting clause, containing as it does the word "ALL," and in other respects, is not in the form usually found in a conveyance where only an undivided interest is intended to be conveyed.

In view of the foregoing, we hold that the trial court erred in not admitting appellant's Exhibit 1 in evidence as color of title.

For the same reasons the trial court erred in not admitting appellant's Exhibit 6 in evidence as color of title. Said Exhibit 6 is the deed from Hattie V. Salter and Cora H. Plemmons to W. M. Averett.

We see no occasion to treat any other assignments of error.

The decree is reversed and the cause is remanded.

Reversed and remanded.

GOODWYN, COLEMAN and HARWOOD, JJ., concur.