Justice Beth Baker delivered the Opinion of the Court.
***281 ¶1 Mark T. Nelson and Jo Marie S. Nelson purchased property from Mary Jo Davis and Anthony Palese, Jr., in 1997. The deed purported to sell the Nelsons the property in its entirety save a portion of the mineral estate reserved in Davis and Palese. After years of farm use, the Nelsons and Davis and Palese leased the property for oil and gas development. In the ensuing title research, the Nelsons' counsel uncovered possible remote heirs with an interest in the property-George Salituro, Jr., and Rose M. Salituro. The Nelsons brought a quiet title action in the Fifteenth Judicial District Court, Roosevelt County, and the District Court ruled in their favor. The court quieted surface title and a one-half interest in the mineral estate in the Nelsons, with the remaining half interest in Davis and Palese. The Salituros appeal. We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶2 The parties dispute the ownership of, and title to, a 160-acre tract of land in Roosevelt County, Montana (the "Property"). For purposes of the issues involved in this case, title to the Property is traced back to Paul Bisceglia. Paul died intestate in 1916, leaving behind his wife Louise and their five children. Under a recorded Decree of Distribution ***282 issued by a district court to distribute Paul's estate, Louise received a one-third interest in the Property, and each of their five children received a two-fifteenths interest.
¶3 Three of the five children preceded Louise in death and died intestate with no children or spouses. Under the laws of intestate succession, their interests in the Property passed to Louise. Louise died intestate in 1965. There were no probate or intestacy proceedings commenced to distribute Louise's estate. Under the laws of intestate succession, her interests in the Property passed equally to her two surviving children: Rose Bisceglia and Angelo Bisceglia. Thus, after the death of their mother, Rose and Angelo each owned a one-half interest in the Property.
¶4 Rose Bisceglia married twice. She had two children from her first marriage: Josephine Palese and a son who preceded her in death. After her first husband's death, Rose married George Salituro. George Salituro and Rose had no children together. When Rose died intestate in 1987, there were no probate or intestacy proceedings commenced to distribute Rose's estate. Under the laws of intestate succession, her one-half interest in the Property passed in equal one-quarter shares to her surviving daughter-Josephine Palese-and her second husband-George Salituro.
¶5 The parties to this action do not dispute that an interest in the Property passed to George Salituro upon Rose's death. The record *336 shows, however, that Angelo Bisceglia-Rose's surviving brother and intestate successor to a one-half interest in the Property through his parents, Paul and Louise-and Josephine Palese-Rose's surviving daughter and intestate successor to a one-quarter interest in the Property through Rose-did not realize that George Salituro took an interest in the Property upon Rose's death. After Rose's death, Angelo Bisceglia prepared and recorded an affidavit in the property records of Roosevelt County, Montana, accounting for the descendants of his parents. The affidavit does not mention Rose's second marriage. In 1988, Josephine Palese and her husband, along with Angelo Bisceglia and his wife, issued a deed purporting to convey the entirety of the Property to Josephine's two children-Mary Jo Davis and Anthony Palese, Jr. ("Davis and Palese").
¶6 From 1988 to 1997, Davis and Palese leased the Property to Tom Nelson for grazing and grain farming, placed it in the Conservation Reserve Program ("CRP"), and paid all of the property taxes. In 1997, they sold the Property to Mark T. Nelson and Jo Marie S. Nelson (the "Nelsons"), reserving "an undivided one-half of all Grantor's right, title and interest in and to all of the oil, gas and other minerals in and ***283 under" the Property. The Nelsons used the Property for grazing and enrolled the Property in CRP. Starting in 2006, the Nelsons began leasing the Property for oil and gas development.
¶7 At some point after mineral production started, a mineral developer sought confirmation of the Property's title. Upon investigation, the Nelsons' attorney discovered the overlooked one-quarter interest that vested in Rose's second husband, George Salituro. George Salituro died intestate in 1991 and no probate or intestacy proceedings were commenced to distribute his estate. Under the laws of intestate succession, his one-quarter interest in the Property passed to his two children from a prior marriage: George Salituro, Jr., and Rose Salituro (the "Salituros"). The Nelsons filed a quiet title action, naming George Salituro's children as defendants. Davis[1] and Palese also filed an answer to the suit.
¶8 The parties filed cross-motions for summary judgment. The District Court granted summary judgment in favor of the Nelsons and Davis and Palese, concluding in part that Davis and Palese had extinguished the Salituros' interest in the Property through adverse possession before transferring it to the Nelsons in 1997. The District Court quieted title in favor of the Nelsons, except for a fifty percent mineral reservation in favor of Davis and Palese.
STANDARDS OF REVIEW
¶9 We review a district court's grant of summary judgment de novo. RN & DB, LLC v. Stewart , 2015 MT 327, ¶ 13, 381 Mont. 429, 362 P.3d 61. We examine the pleadings, affidavits, and discovery materials in the record to determine whether there is a "genuine issue as to any material fact" and whether "the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). On cross-motions for summary judgment in which there are no genuine issues of material fact, we review the district court's conclusions of law to determine whether they are correct. Bud-Kal v. City of Kalispell , 2009 MT 93, ¶ 15, 350 Mont. 25, 204 P.3d 738.
DISCUSSION
¶10 The Salituros raise multiple issues on appeal, arguing that they have an interest in both the surface and mineral estates. Although the ***284 District Court discussed alternative bases for its decision, we confine our analysis to the determinative question whether Davis and Palese adversely possessed the Property before conveying it to the Nelsons in 1997.
¶11 The Salituros argue that Davis and Palese never filed an adverse possession lawsuit against the Salituros and are now barred by the statute of limitations from doing so. The Salituros argue that Davis's and Palese's adverse possession claims also fail on the merits because to extinguish the *337 interests of fellow cotenants, a cotenant not only must meet the elements of adverse possession, but also must "oust" fellow cotenants from the property. Relying on YA Bar Livestock Co. v. Harkness , 269 Mont. 239, 887 P.2d 1211 (1994), the Salituros maintain that no ouster occurred here because Davis and Palese never communicated to the Salituros that they were ousting them, nor did Davis and Palese take any other action that was beyond what a cotenant has the right to do.
¶12 Davis and Palese argue that the Salituros failed to raise their limitations argument before the District Court and therefore are barred from doing so on appeal. Davis and Palese maintain that they ousted the Salituros and adversely possessed the Property under § 70-19-407, MCA. The Nelsons argue in the alternative that if Davis and Palese did not adversely possess the Property, then the Nelsons did. Relying on Fitschen Bros. Commercial Co. v. Noyes' Estate , 76 Mont. 175, 246 P. 773 (1926), both argue that a conveyance of the whole property to a stranger to the cotenancy, together with taking possession thereof, amounts to an ouster of one's cotenants.
¶13 The Salituros did not argue to the District Court that Davis and Palese were time-barred from asserting or defending their adverse possession claims. It is well established that we will not address an issue raised for the first time on appeal. See Becker v. Rosebud Operating Servs. Inc. , 2008 MT 285, ¶ 17, 345 Mont. 368, 191 P.3d 435. We turn to the merits of the claim.
¶14 "For a claim of adverse possession to succeed, the claimant must prove that the property was claimed under color of title or by actual, visible, exclusive, hostile and continuous possession for the full statutory period of five years." YA Bar Livestock Co. , 269 Mont. at 244, 887 P.2d at 1213. In addition, the claimant must have paid all taxes due on the property during the statutory period. Section 70-19-411, MCA. Section 70-19-407, MCA, governs adverse possession under color of title. It provides that a party may adversely possess property if he or she "entered into the possession of the property under claim of title, exclusive of other right" and continued in occupation and possession for ***285 five years. A person enters into possession under claim of title pursuant to the statute when the person holds land under "any instrument purporting to convey the land or the right to its possession, provided the claim is made thereunder in good faith." Fitschen , 76 Mont. at 196, 246 P. at 779. For a party to possess and occupy a property under § 70-19-407, MCA, the party must "usually cultivate[ ] or improve[ ]" the property, protect it "by a substantial enclosure," use it "for pasturage," or put it to "the ordinary use of the occupant." Section 70-19-408(1)(a)-(c), MCA.
¶15 Generally, when a cotenant is in possession of shared property, that cotenant's possession is not hostile to the rights of another cotenant, but is presumed "to be the possession of his cotenants and himself." Fitschen , 76 Mont. at 197, 246 P. at 779. This Court has recognized the exception "that one tenant in common may so enter and hold as to render the entry and possession adverse, and amount to an ouster of a cotenant." Fitschen , 76 Mont. at 197, 246 P. at 779. Although a cotenant claiming sole title must "oust" the other cotenants, "this does not necessarily imply an actual physical ouster, but it is sufficient if the grantee claims exclusive ownership and by his conduct denies the right of others to any interest in the property." Fitschen , 76 Mont. at 198, 246 P. at 779. A cotenant can oust a fellow cotenant by providing notice that he or she is claiming an interest hostile and adverse to the fellow cotenant's interest. YA Bar Livestock Co. , 269 Mont. at 246, 887 P.2d at 1214-15. "Where one goes into possession of property under deed, or deeds, executed by a cotenant, and purporting to convey the entire property, such possession is hostile to that of the cotenant, and he is charged with knowledge of the hostile character thereof." Fitschen , 76 Mont. at 199, 246 P. at 780 (internal quotations omitted).
¶16 The Salituros argue that under our precedent in YA Bar Livestock Company , a cotenant in possession must provide actual notice to the non-possessing cotenants of their ouster. But YA Bar Livestock Company did not change the rule established in *338 Fitschen that an out-of-possession cotenant is charged with knowledge of the hostile character of a cotenant's possession if the cotenant in possession entered under color of title. See Fitschen , 76 Mont. at 199, 246 P. at 780.[2] Rather, we held that YA Bar had not entered into possession ***286 under color of title. Ernest B. Harkness purported to convey the entirety of a tract of land to YA Bar Livestock Company, a corporation of which he was president and majority shareholder. As the executor of his mother's estate, Harkness knew that he held this property in a cotenancy with four siblings and six nieces and nephews. Armed with that knowledge, Harkness's conveyance of the entire property to YA Bar was not made in good faith, and YA Bar was charged with notice of its cotenants' interests. We held that a grantor could not create color of title by conveying land that he did not own to a corporation of which he was president and majority shareholder. YA Bar Livestock Co. , 269 Mont. at 249, 887 P.2d at 1216. YA Bar had not provided actual notice to the known cotenants that its occupation of the property was hostile to their claims. Thus, YA Bar's adverse possession claims failed because it could not demonstrate that it ousted its cotenants either through taking possession under color of title or by providing actual notice that its possession was hostile to its cotenants' interests. YA Bar Livestock Co. , 269 Mont. at 246, 248, 887 P.2d at 1215, 1216.
"[Color of title is created by] a title that is imperfect, but not so obviously so that it would be apparent to one not skilled in the law. Under Montana law, an instrument which purports to convey land or the right to its possession is sufficient color of title as a basis for adverse possession if the claim is made in good faith ."
YA Bar Livestock Co , 269 Mont. at 248, 887 P.2d at 1216 (quoting Joseph Russell Realty Co. v. Kenneally , 185 Mont. 496, 503, 605 P.2d 1107, 1111 (1980) (internal quotations and citations omitted)).
¶17 Unlike YA Bar, Davis and Palese entered into possession under color of title. Upon Rose Bisceglia's death, Angelo Bisceglia, Josephine Palese, and George Salituro were cotenants in the Property. Two of the cotenants-Angelo Bisceglia and Josephine Palese-purported to convey the entirety of the Property to Davis and Palese, who were third ***287 parties to the cotenancy. Davis and Palese recorded this deed. Davis and Palese both stated in affidavits that they believed they received the entirety of the Property in the 1988 deed. These statements are uncontradicted in the record. The Salituros presented no evidence in the District Court and do not argue on appeal that Angelo Bisceglia and Josephine Palese had actual knowledge of George Salituro's interest. And the public record in Roosevelt County included an affidavit of heirship from Angelo Bisceglia purporting to account for all Bisceglia heirs. On this record, we conclude that Davis and Palese had no actual or constructive knowledge that they were cotenants with anyone. Although the 1988 deed could not convey title to the entirety of the Property because Angelo Bisceglia and Josephine Palese did not own the Property in its entirety, the deed gave Davis and Palese color of title to the entirety of the Property because the deed purported to convey the entirety of the Property, was not void on its face, and was made in good faith. See Fitschen , 76 Mont. at 196, 246 P. at 779.
¶18 After the 1988 deed, Davis and Palese leased the Property to Tom Nelson, *339 enrolled it in CRP, and paid all of the property taxes. These actions meet the requirements for possession and occupation of the Property under § 70-19-408, MCA. We agree with the Salituros that many of the acts upon which Davis and Palese rely to demonstrate possession and occupation would be consistent with holding an interest in a cotenancy if Davis and Palese's entry were not hostile. But because they entered under a recorded deed that purported to convey to them the entirety of the Property, Davis and Palese's initial entry of the Property was "obviously consistent with the disclaimer and disavowal of other tenants' interests." See Fitschen , 76 Mont. at 198, 246 P. at 779. Their entry under color of title constitutes ouster. Five years after the 1988 lease, Davis's and Palese's claims to the Property in its entirety ripened into good title. When Davis and Palese conveyed the Property to the Nelsons in 1997, the Salituros' interests in the Property already had been extinguished. The District Court correctly quieted titled to the Property in favor of the Nelsons, except for and subject to Davis and Palese's combined fifty percent mineral reservation.
CONCLUSION
¶19 The District Court's judgment is affirmed.
We Concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.
DIRK M. SANDEFUR, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.

Mary Jo Davis transferred her interest in the Property to the Layne Stuart Davis and Mary Jo Davis Revocable Trust Dated 8-2-2011. Mary Jo Davis and Layne Stuart Davis appear in this action as its trustees.

The principles espoused in Fitschen are consistent with the clear weight of authority that ouster occurs when one cotenant purports to convey the entire property to a party that was not previously a cotenant, a deed of transfer is recorded, and the transferee takes possession of the property. Under such circumstances no additional direct notice is required. See, e.g. , Thompson v. Odom , 279 Ala. 211, 184 So.2d 120, 131-32 (1966) ; Parsons v. Sharpe , 102 Ark. 611, 145 S.W. 537, 538-39 (1912) ; Smith v. Lemp , 31 Del.Ch. 1, 63 A.2d 169, 170 (1949) ; Morrison v. Byrd , 72 So.2d 657, 658 (Fla. 1954) ; Jordan v. Robinson , 229 Ga. 761, 194 S.E.2d 452, 455 (1972) ; Jordon v. Warren , 602 So.2d 809, 816 (Miss. 1992) ; Nelson v. Christianson , 343 N.W.2d 375, 378 (N.D. 1984) ; Lummus v. Brackin , 59 N.M. 216, 281 P.2d 928, 929 (1955) ; Kennedy v. Rinehart , 281 Or. 391, 574 P.2d 1119, 1122 (1978) ; see also 3 Am. Jur. 2d Adverse Possession § 204 (2018). A minority of jurisdictions hold that a deed purporting to transfer the entire estate to a non-cotenant party does not meet the requirements of notice and ouster. See, e.g. , Johnson v. McLamb , 247 N.C. 534, 101 S.E.2d 311, 313 (1958).